IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Cynthia Agnew, ) | |
| ) | |
| Plaintiff, ) | CA No. 8:06-2159 |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Verizon Wireless Short Term Disability ) | |
| Plan, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Cynthia Agnew's ("Agnew") motion to remand her application for short term disability ("STD") benefits to Verizon Wireless Short Term Disability Plan's (the "Plan") administrator for further consideration. As the plan providing Agnew's LTD insurance is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, the court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties have filed a joint stipulation ("J.S.") and disagree as to whether the Court may dispose of this matter. (J.S. ¶ 8.) The Plan's position is that the Court may dispose of this matter based upon the J.S. (Id.) However, Agnew contends that remand is appropriate because she did not receive a full and fair review. (Id.) For the reasons below, the court denies Agnew's motion to remand.

I. FACTUAL AND PROCEDURAL BACKGROUND

Agnew is a former employee of Verizon Wireless ("Verizon"). Verizon provided Agnew with STD benefits through the Plan, which was administered by Metropolitan Life Insurance Company ("MetLife"). (J.S. ¶ 3.) Agnew filed a claim for STD benefits on

1

December 21, 2005. (R. at 175-77.) Agnew claimed disability due to depression, an inability to eat or sleep, and crying due to the end of a relationship with her boyfriend. (Id. at 134, 150, 175.) On the same date, MetLife sent a letter to Agnew requesting information from her physician in order to review her claim. The letter informed Agnew that failure to submit the requested information by January 4, 2006, would result in closure of her claim. (Id. at 170.) In addition, MetLife contacted Agnew's physician, Dr. Maria Cayelli ("Dr. Cayelli") directly to request the necessary information. (Id. at 179.)

On January 10, 2006, MetLife denied Agnew's claim on the basis that she did not submit the requested information before January 4, 2006. (Id. at 138.) Agnew appealed the decision, and on February 27, 2006, MetLife upheld the denial of Agnew's application for STD benefits. (R. at 108-10.) In review of Agnew's claim, MetLife considered medical records and memoranda submitted by Dr. Cayelli, and her licensed professional counselor, Debbie Peterson ("Peterson"). (Id. at 109.)

Specifically, Dr. Cayelli submitted notes generated from examinations on November 17, 2005; December 12, 2005; December 16, 2005; January 4, 2006; and January 13, 2006. (Id. at 142-51.) Dr. Cayelli's notes reflect observations of a severely depressed affect, and a worsening depressive disorder status, and a worsening "acute reaction stress emotion status." (Id. at 144-46.) In addition, Dr. Cayelli's notes indicate prescriptions for klonopin, celexa, ambien, synthroid, zyrtec, and ativan. (Id. at 142, 146, 148-50.)

Peterson submitted a memorandum dated January 2, 2006, summarizing Agnew's condition as observed in counseling sessions on December 28, 2005, and January 2, 2006, and a memorandum dated January 24, 2006, giving an update on Agnew's condition. (R. at

133-34.) In the memoranda, Peterson noted that Agnew "stated she is having difficulty staying focused, is unable to concentrate, and is having problems eating, sleeping, and exercising." (Id. at 134.) In addition, Peterson noted that Agnew reported "having problems following through on minor tasks and details" while at work and "feelings of intense sadness and lone[li]ness." (Id.) In the January 2, 2006, memorandum, Peterson initially predicted that Agnew would be able to return to work on January 30, 2006. (Id.) However, due to "intense stress" related to an investigation of her job at Verizon Wireless, Peterson revised the date in the January 24, 2006, memorandum, and "request[ed] that Ms. Cynthia Agnew not return to work until February 27, 2006." (Id. at 133.)

In addition to the opinions of Dr. Cayelli and Peterson, MetLife requested an independent medical opinion from Dr. Marcus Goldman ("Dr. Goldman"), a board-certified psychiatrist and neurologist. (R. at 126-29.) In a memorandum dated February 9, 2006, Dr. Goldman opined that 'the available information reveals no significant objective data indicative of a major affective, anxiety, or psychotic disorder that would preclude work." (Id. at 128.) Dr. Goldman based his opinion upon a review of the medical records and memoranda submitted by Dr. Cayelli and Peterson. (Id. at 126-29.)

On February 14, 2006, Dr. Cayelli submitted additional treatment notes from examinations on January 13, 2006; January 14, 2006; January 25, 2006; February 7, 2006; and February 13, 2006. (Id. at 115-23.) In the January 13, 2006, notes, Dr. Cayelli noted that Agnew cried during the exam and demonstrated a "severely depressed affect." (Id. at 115.) The records also reflected a discharge summary written by Dr. Michael Kunkel ("Dr. Kunkel") resulting from Agnew's admission to the emergency room at the AnMed Health

System, where she stayed overnight. Dr. Kunkel stated that Agnew was "admitted for further evaluation and management of some mild dehydration secondary to some psychosocial stressors that had left this patient eating poorly and washed out." (R. at 117.) He recommended outpatient therapy for psychiatric treatment. (Id.)

On January 25, 2006, Dr. Cayelli stated that "[p]atient is doing well on the medication prescribed and feels symptoms are improving." (Id. at 119.) While Dr. Cayelli's notes reflected that Agnew was still "very worried" about her job, she also reported feeling like "she is getting back to her old self and having more confidence in herself." (Id. at 119.) However, despite this improvement, Dr. Cayelli noted that Agnew was "better overall but now with stress of not knowing about her job still needing more time off." (Id. at 120.) The treatment notes from February 7, 2006, continued to reflect improvement, and the notes from February 13, 2006, do not comment on Agnew's psychiatric condition. Dr. Goldman reviewed the additional records submitted by Dr. Cayelli and opined that "[p]sychiatric incapacity still cannot be supported for the dates in question." (R. at 112-13.)

In a February 27, 2006, letter, MetLife informed Agnew that her claim had been denied. (Id. at 108-10.) The letter stated as follows:

> To assist in our review, your file was referred to an Independent Physician Consultant who is Board Certified in Psychiatry and Neurology for a thorough review.
>
> The physician consultant reviewed the medical documentation and stated that the medical information did not support functional limitations based on a psychiatric disorder. The medical information revealed no significant objective data to support the severity of a psychotic disorder that would preclude work.

4

(Id. at 109.)  The letter did not identify Dr. Goldman by name, but stated that "[u]pon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim and identify any medical . . . expert(s) whose advice was obtained in connection with your claim."  (Id. at 110.)

In a letter dated May 11, 2006, Rob Sneed ("Sneed"), an attorney, informed MetLife that he represented Agnew.  In addition, Sneed requested a review of the denial of Agnew's claim and requested a copy of the documents upon which MetLife based its decision to deny Agnew benefits.  (Id. at 106.)  On May 17, 2006, MetLife responded to Sneed in a letter dated May 17, 2006.  The letter informed Sneed that MetLife would forward him the requested documents upon his completion of the necessary medical release, but that Agnew had "already had a complete appeal review" of her claim.  (R. at 105.)

In a June 15, 2006, letter, Sneed asked MetLife to "keep this matter open until I can continue further examining this issue as well as review the documents you provided."  (Id. at 99.)  Sneed attached an affidavit signed by Agnew.  (Id. at 101-04.)  In the affidavit, Agnew described the "core mental factors of a sedentary job at Verizon Wireless" and identified her treating medical providers.  (Id. at 101-02.)  In addition, Agnew described her condition during the relevant time period as follows:

> On January 13, 2006, I was admitted to AnMed due to dehydration, depression, anxiety and was kept overnight.  I had been having difficulty staying focused, unable to concentrate, and having problems eating, sleeping, and exercising.  I was unable to relax, and had intense feelings of sadness and loneliness.  At work I was having problems following through on minor tasks and details.  My Licensed Professional Counselor Debbie Peterson determined that stressors were causing me mild to serious impairment in social, physical, and emotional functioning.  She diagnosed me as having Depression Recurrent

  Moderate, Partner Relational Problem, and Bereavement due to ending of relationship.

(Id. at 102.)  Agnew stated that as a result of her symptoms, she "was not able to perform the essential core mental factors required by my position as a Store Manager during the period of December 21, 2005, to February 27, 2006."  (R. at 103.)

  MetLife responded to Sneed on June 28, 2006, and informed Sneed for a second time that "Ms. Agnew has already had a complete appeal review" and that "no further appeals will be considered."  (Id. at 98.)  However, on June 29, 2006, Sneed sent a letter to MetLife requesting MetLife to "keep this matter open until I can continue further examining this issue as well as review the documents you will be providing."  (Id. at 93.)  Sneed attached an affidavit of Peterson to his letter.  (Id. at 94-97.)  In the affidavit, Peterson stated that Agnew has been diagnosed with "Major Depressive Disorder, Recurrent/Moderate" and that her "state of depression made it difficult for her to concentrate."  (Id. at 96.)  In addition, Peterson opined that Agnew "was disabled from her own occupation for the period of December 21, 2005, through February 27, 2006.  (R. at 96-97.)

  MetLife responded to Sneed's June 29, 2006, letter on July 10, 2006, and informed Sneed that no further appeals would be considered.  (Id. at 92.)  On July 18, 2006, Sneed sent a final letter to MetLife with an affidavit of Dr. Cayelli and Agnew's medical records attached.  (Id. at 2.)  Sneed requested MetLife to "consider all this key information I have provided in making your decision."  (Id.)  In her affidavit, Dr. Cayelli stated that Agnew suffered from "Acute Reaction Stress Emotion and Depressive Disorder," and that Agnew "was not able to concentrate on her work due to the stress of the ending of [a] long term

relationship." (Id. at 3-4.) In addition, Dr. Cayelli stated that Agnew's "state of depression made it difficult for her to concentrate," and that Agnew's "inability to focus and her inability to follow through on minor tasks would make it difficult for her to interact with her staff and customers." (R. at 5.) Finally, Dr. Cayelli stated that "Ms. Agnew was extremely stressed and needed time to adjust to her medications before she could interact and respond to others in a normal work environment." (Id. at 5.) Based on these observations, Dr. Cayelli opined that Agnew was disabled for the period of December 21, 2005, through February 27, 2006. (Id. at 5-6.)

On July 26, 2006, MetLife responded to Sneed's July 12, 2006, letter. MetLife informed Sneed as follows:

> As explained in our previous letters of May 17, 2006, June 28, 2006 and July 10, 2006, please be advised that Ms. Agnew has already had a complete appeal review and was advised of the determination in a letter dated February 27, 2006. Ms. Agnew was already informed that she has exhausted her administrative remedies.
>
> Please understand that under Ms. Agnew's employer's plan, Ms. Agnew already exhausted her administrative remedies and no further appeals can be considered.

(Id. at 1.) On July 31, 2006, Agnew filed the instant action.

## II. DISCUSSION OF THE LAW

Agnew argues that her claim for STD benefits should be remanded to MetLife for further consideration. Agnew bases this contention on two grounds.

First, Agnew argues that her claim should be remanded due to MetLife's failure to disclose information during the review process. (Pl.'s Mot. Remand 5.) The regulations governing ERISA plans state that plans must "provide for the identification of medical and

7

vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination . . . ." 29 C.F.R. § 2560.503-1(h)(3)(iv) (2006).  In a February 27, 2006, letter, MetLife informed Agnew of the decision to uphold the original denial of STD benefits.  (R. at 108.)  In the letter, MetLife informed Agnew that her file was referred to an independent physician consultant.  (Id. at 109.)  In addition, MetLife stated that "[u]pon request, MetLife will . . . identify any medical . . . expert(s) whose advice was obtained in connection with your claim."  (Id. at 110.)

More importantly, the same provision was found in the "Plan Administration Summary Plan Description" ("SPD")  (Id. at 254.)  The SPD was incorporated by reference into the Plan.  (Id. at 301.)  Therefore, the claims procedures of the Plan clearly provided for the identification of medical experts whose advice was obtained on behalf of the plan in connection with an adverse benefit determination.  Agnew does not allege that she requested the identification of the medical experts consulted pursuant to her claim and was denied this information.  (Pl.'s Mot. Remand 5.)  Therefore, Agnew's argument that the Plan did not provide for the identification of medical experts is without merit.

Second, Agnew argues that her claim should be remanded so that her claim can be evaluated with the inclusion of the three affidavits and medical records submitted by Sneed after Agnew's claim was finally denied.  (Id. 4.)  The court finds that a remand on this ground is not warranted.

"[R]emand to the plan administrator is . . . available to the district court, where necessary."  Quesinberry v. Life Ins. Co. of North Am., 987 F.2d 1017, 1025 n.6 (4th Cir. 1993).  However, the record before MetLife was not incomplete, such that Agnew's claim

8

should be remanded.  The three affidavits submitted by Agnew after the final decision of MetLife provide no new evidence to support a finding of disability.  The affidavits merely restate the work history, diagnosis, symptoms, and opinions of disability represented in Agnew's records that were considered by MetLife in the review of her claim.  The records considered by MetLife during the review of Agnew's claim provided detailed and thorough descriptions of her condition, diagnosis, and treatment.  (<u>Id.</u> at 133-34, 142-51, 115-23.)  Agnew received a "full and fair review . . . of the decision denying the claim" pursuant to 29 U.S.C. § 1133(2).  Therefore, a remand to allow MetLife to consider the three affidavits submitted by Sneed is not warranted, and Agnew's motion to remand is denied.

       Therefore, it is

       **ORDERED** that Agnew's motion to remand, docket number 14, is denied.

       **IT IS SO ORDERED.**

                                        s/Henry M. Herlong, Jr.
                                        United States District Judge

Greenville, South Carolina
April 13, 2007